# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID ANGLE DIAZ, JR., | ) |
| Plaintiff, | ) |
| v. | ) 7:16CV5003 |
| CAROLYN W. COLVIN, Commissioner, Social Security Administration, | ) MEMORANDUM AND ORDER |
| Defendant. | ) |

Plaintiff, David A. Diaz ("Diaz"), seeks review of the decision by the defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act. See 42 U.S.C. § 1381. For the reasons explained below, the Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

On August 14, 2013, Diaz filed an application for SSI, alleging disability beginning March 5, 2011.[1] (Tr. 10, 171). Diaz claimed medically severe impairments of "[attention deficit hyperactivity disorder] ("ADD") and related mental problems," and chronic back and leg pain. (Tr. 29-30, 129). Diaz's application was initially denied on November 6, 2013, and upon reconsideration on December 5, 2013. (Tr. 122, 129).

Diaz was appointed counsel on December 17, 2013. (Tr. 133). On February 11, 2014, he requested a hearing before an Administrative Law Judge ("ALJ"), and on March 25, 2014, he made a written request for mental and physical consultative examinations. (Tr. 134-139). Diaz asserted the examinations were necessary due to the deficiency in his

---

[1] Diaz previously filed an application for disability benefits on May 18, 2009, alleging disability due to chronic leg pain, back pain, and dyslexia beginning August 12, 2003. An ALJ denied Diaz's application on March 4, 2011. (Tr. 108-118).

1

medical records resulting from his incarceration between 2002 and 2009 and his financial inability to obtain regular medical care. (Tr. 138-139).

An administrative hearing was held before the ALJ on January 26, 2015. (Tr. 27). Diaz and an impartial vocational expert testified at the hearing. Counsel for Diaz orally renewed his request for a consultative examination. (Tr. 30). Following the hearing, the ALJ issued an unfavorable decision on May 28, 2015. (Tr. 7-11). The ALJ denied Diaz's oral and written requests for a physical consultative examination because "[Diaz] specifically testified that, while his back bothered him, his main medical problem is [ADD]." The ALJ also denied Diaz's request for a mental consultative examination because he had "received mental health treatment since the application date and such treatment notes provide sufficient evidence to determine [Diaz's] mental functioning without consultative examination." (Tr. 10).

The Appeals Council denied Diaz's Request for Review of the ALJ's decision. (Tr. 1). Diaz has now filed this action to set aside the Commissioner's decision. ([Filing No. 1](#)).

## FACTUAL SUMMARY

Diaz was born on January 18, 1970, and was 43 years old on the date he filed his application. (Tr. 31). He has never had a driver's license, has a ninth grade education, and a limited ability to read and write. (Tr. 31-33).

In 1999, Diaz was hit by a car and fractured both his legs, necessitating bilateral leg surgeries. (Tr. 62-63). Diaz's medical records and testimony reflect that Diaz still has "pins and plates" in his left leg from the surgeries and he has reported chronic lower leg pain since the accident. (Tr. 306; 288, 293-299, 301, 304, 306-309, 315).

Diaz was incarcerated between 2002 and 2009. (Tr. 46-47). During Diaz's incarceration, he worked in the prison wood shop until he hurt his back lifting something, and transitioned to a "light duty job" cleaning windows and dusting. (Tr. 35, 38, 42). Diaz saw "prison doctors" about his back, and received medication for his leg and back pain. (Tr. 39, 69).

Diaz has sought medical treatment for back pain once during the relevant period, on September 6, 2013, when he visited an emergency room for moderate lower back pain starting four days prior. (Tr. 325). Lumbar spine x-rays reflected minimal degenerative changes and no evident new fracture. (Tr. 325). Diaz was diagnosed with an acute lumbar strain and was instructed to ice his back intermittently, limit lifting, and rest, and was prescribed ibuprofen and flexeril. (Tr. 326).

At the administrative hearing, Diaz testified he cannot stand for more than half an hour or lift more than twenty-five pounds due to pain and bruising in his legs. (Tr. 63-64). During a medical appointment in July 2014, Diaz reported he can "tolerate" his chronic leg pain. (Tr. 354).

With respect to Diaz's claimed mental impairments, a consultative mental examination from December 2012 opined that Diaz has some learning issues, including limited reading abilities. (Tr. 297-305). Diaz believes he has been diagnosed with dyslexia. (Tr. 298-300, 308-309). At the administrative hearing, Diaz testified he takes Concerta for ADD and recently began taking Lyrica to help with his anxiety and back pain. (Tr. 40-41).

Diaz testified he regularly receives psychiatric care. (Tr. 39). An assessment dated August 18, 2013, by Kathryn Batson, APRN, notes diagnoses of impulse control disorder, ADD, and post-traumatic stress disorder ("PTSD"). (Tr. 311-316). Medical records from medication management appointments with Batson from May, June, August, and November 2013, and February, May, July, and September 2014, generally reflect that Diaz reports he does well taking Concerta, which helps his concentration. (Tr. 318-321, 345, 351, 353).

Diaz testified he does not receive any other medical care besides the psychiatric care mentioned above, unless he goes to the emergency room for his "back spasms" and back pain "maybe once every sixth months." (Tr. 39-40).

Diaz confirmed that his work history in the last fifteen years included: "some" work in masonry between 2001 and 2002; working as a dishwasher between 2011, 2012; and working as a fast food cook between 2012 to 2013. (Tr. 35). At the time of the ALJ

3

hearing, Diaz's last recorded work earnings were between July and September of 2013. (Tr. 33-34). During a medical appointment in November 2013, Diaz reported he lost his job in August 2013 after burning his hand with hot water at work. (Tr. 241, 331, 345).

Diaz testified he was hired by a newspaper company and worked one day in May 2014, but left because his "back started hurting real bad." (Tr. 34). Diaz testified the main reason he thinks he loses his jobs is "[b]ecause of [his] concentration and [his] ADD," and does not think he is able to work because of his back. (Tr. 43, 46).

## THE ALJ's DECISION

The ALJ evaluated Diaz's claim using the "five-step" sequential analysis prescribed by the Social Security Regulations.[2] See 20 C.F.R. § 404.1520(a)(4). In doing so, the ALJ found that Diaz's dyslexia and lumbar degenerative disc disease were severe impairments, and that his status post bilateral leg fractures was a non-severe impairment. (Tr. 12-13). The ALJ further found that Diaz's claimed mental impairments from impulse control disorder, PTSD, and ADD were non-medically determinable mental impairments because the diagnoses were assessed by an APRN, and not a medically acceptable source. (Tr. 13). The ALJ found that the above impairments did not meet or medically equal the severity of one of the impairments listed in the regulations. (Tr. 13).

---

2 The Social Security Administration uses a five-step process to determine whether a claimant is disabled:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

4

The ALJ formulated Diaz's residual functional capacity ("RFC")[3] as follows:

> [C]laimant has the [RFC] to occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk for up to 6 hours, and sit for up to 6 hours. He can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffold. He can occasionally stoop, kneel, crouch, and crawl. He should avoid exposure to extreme cold and wetness, as these terms relate to weather conditions. He needs to avoid excessive vibration, and unprotected heights. He should avoid occupations that require reading.

(Tr. 13).

In making her RFC determination, the ALJ found that Diaz's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, the ALJ found Diaz's "statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible" based on clinical and diagnostic evidence and his inconsistent work history. (Tr. 14-15).

The ALJ found Diaz has no past relevant work and thus considered whether Diaz could make a successful adjustment to other work. (Tr. 19). The vocational expert in this case testified that an individual with Diaz's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as counter supply worker, linen room attendant, and laundry worker. (Tr. 52-54). Based on the testimony of the vocational expert, and the medical and opinion evidence in the record, the ALJ determined that jobs exist in significant numbers in the national economy that Diaz could perform, and, therefore, Diaz was not disabled from August 14, 2013, the date the application was filed. (Tr. 19-20).

On appeal, Diaz contends the ALJ erred in (1) failing to order consultative examinations and develop the record; (2) evaluating the credibility of Diaz's testimony; and (3) making an unfavorable decision not supported by the record as a whole. Although Diaz labels each error separately, each error contains the same argument: the ALJ failed to fully

---

[3] "'Residual functional capacity' is 'the most [a claimant] can still do' despite the 'physical and mental limitations that affect what [the claimant] can do in a work setting' and is assessed based on all 'medically determinable impairments,' including those not found to be 'severe.'" *Gonzales*, 465 F.3d at 894 n.3 (quoting 20 C.F.R. §§ 404.1545 and 416.945).

develop the evidentiary record, and thus the ALJ's credibility determination and unfavorable decision are not supported by substantial evidence in the record.

## ANALYSIS

A reviewing court "will uphold the ALJ's decision to deny benefits if that decision is supported by substantial evidence in the record as a whole." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). In determining whether substantial evidence supports the ALJ's decision, the court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010) (internal citation omitted). The reviewing court "may not reverse simply because [it] would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).

Diaz primarily argues that, due to his incarceration between 2001 and April 2009, there was not enough medical evidence in the record for the ALJ to have determined whether he is disabled. Diaz asserts the ALJ should have ordered mental and physical consultative examinations to develop the record. (Filing No. 18 at pp. 10-12).

An ALJ does have "a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012). However, "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (quoting *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010); See 20 C.F.R. § 404.1519a(b). The claimant "bears a heavy burden in showing the record has been inadequately developed," and "must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 Fed. Appx. 200, 204 (8th Cir. 2007) (citing *Haley v. Massanari*, 258 F.3d 742, 749-750 (8th Cir. 2001)).

6

Contrary to Diaz's assertions, the record before the ALJ contained sufficient medical evidence for the ALJ to have made an informed decision regarding whether Diaz was disabled. An ALJ's duty to develop the record "includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue." *Strongson v. Barnhart*, 361 F.3d 1066, 1071-72 (8th Cir. 2004) (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). The record in this case contains evidence from Diaz's treating and examining physicians regarding Diaz's claimed impairments. Diaz's medical records from his regular psychiatric care appointments between May 2013 and September 2014 document Diaz's treatment regimen for his mental impairments. These records reflect that Diaz was prescribed Concerta, which he reported had no side effects, and improved his concentration and focus. Diaz's medical records from his emergency room visits also contain evidence regarding his claimed physical impairments of his back and legs.

The record also contains opinion evidence regarding Diaz's claimed impairments, including an opinion dated March 13, 2014, from Shari Shore, a licensed mental health therapist, and opinions from two state agency consultants, Patricia Newman, Ph.D., Linda Schmechel, Ph.D., regarding Diaz's limitations arising from his mental impairments. The record also contains opinions from two state agency consultants, Jerry Reed, M. D., and Robeti M. Roth, M.D., regarding Diaz's limitations regarding his physical impairments. (Tr. 77-104). Additionally, the record contains evidence from a previously adjudicated period regarding Diaz's claimed mental and physical impairments, including a consultative mental examination by Rebecca Schroeder, Ph.D. in December 2012, and a consultative physical examination by David Lindley, M.D. in December 2012. Finally, the record also contains a physical residual functional capacity assessment by Glen Knosp, M.D., dated September 14, 2009, which included physical examinations of Diaz's lumbar spine and legs.

In reviewing the record as a whole, the Court concludes the record contained sufficient medical evidence upon which the ALJ could make an informed decision.

Therefore, the Court finds the ALJ did not err in failing to order mental and physical consultative examinations.

Similar to his argument above, Diaz argues the ALJ's unfavorable decision, including her finding regarding Diaz's credibility, suffers from the same defect as her decision to deny consultative examinations; that is, there was insufficient evidence in the record to make an informed decision on those matters. Diaz does not seek to revisit the "weight" the ALJ assigned to each separate medical record or source in the record; rather, Diaz argues the record itself is inadequate. ([Filing No. 18 at p. 7](#)).

In determining whether the Commissioner's decision is supported by substantial evidence, the court reviews the entire administrative record and considers six factors: (1) the ALJ's credibility determinations; (2) the claimant's vocational factors; (3) medical evidence from treating and consulting physicians; (4) the claimant's subjective complaints relating to activities and impairments; (5) any third-party corroboration of claimant's impairments; and (6) a vocational expert's testimony based on proper hypothetical questions setting forth the claimant's impairment(s). See *[Stewart v. Sec'y of Health & Human Servs.](#)*, 957 F.2d 581, 585-86 (8th Cir. 1992) (citing *[Cruse v. Bowen](#)*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *[Polaski v. Heckler](#)*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "need not explicitly discuss each factor;" rather, "[i]t is sufficient if [the ALJ] acknowledges and considers [the] factors before discounting a claimant's subjective complaints." *[Moore v. Astrue](#)*, 572 F.3d 520, 524 (8th Cir. 2009) (quoting *[Strongson](#)*, 361 F.3d at 1072). "The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole." *[Lowe v. Apfel](#)*, 226 F.3d 969, 972 (8th Cir. 2000).

8

In this case, in assessing Diaz's credibility, the ALJ found that although Diaz's medically determinable impairments could reasonably be expected to cause his alleged symptoms and limitations, his "statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible." After reviewing the matter, the Court finds that the ALJ's conclusion that Plaintiff is not fully credible is supported by substantial evidence in the record.

The record shows ALJ properly considered each of the above *Polaski* factors. The ALJ considered the limited and conservative treatment Diaz received as inconsistent with the severity of his subjective complaints. Diaz only sought treatment for back pain once during the relevant period. The diagnosis at that time was acute lumbar strain expected to last two weeks, and mild degenerative changes. Diaz's treatment plan was conservative. See *Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding credibility determination in light of "absence of hospitalizations . . . limited treatment of symptoms, . . . [and] failure to diligently seek medical care."); *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (stating that allegations of disabling pain are discredited by "evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."); *Smith v. Shalala*, 987 F.2d 1371, 1374-75 (8th Cir. 1993) (holding that the ALJ properly considered the claimant's conservative treatment as inconsistent with a finding that the claimant as totally disabled).

The ALJ also properly considered the fact that Diaz's reported his mental impairments were responsive to treatment. Impairments controlled by treatment or medication suggests they are not disabling. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011). Moreover, the ALJ also properly considered that Diaz reported he stopped working in August 2013 for reasons unrelated to his claimed impairments. See *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir. 1992) (finding that a cessation of work for reasons unrelated to medical condition militated against a finding of disability).

The ALJ also considered Diaz's daily activities, including volunteering at his church's senior center, attending church, reading the Bible, playing video games, and caring

for pets. See *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (claimant's description of daily activities including grocery shopping, cooking, driving, and church attendance were inconsistent with allegations of disabling pain). Additionally, the ALJ properly considered Diaz's inconsistent work history "characterized by low, fluctuating earnings." See *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability." Finally, the ALJ also appropriately considered Diaz's statement that he had been looking for work since his applications date. See *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995)(finding record of contemplating work indicates the claimant did not view his pain as disabling).

The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his or her limitations. See *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Id.* at 714. In this case, the ALJ pointed to evidence in the record supporting her decision to discount Diaz's subjective allegations. As such, this Court defers to the ALJ's credibility finding.

Finally, Diaz simply states he "renews the arguments" set forth in his brief in addressing his remaining error that the ALJ's decision was not supported by substantial evidence in the record as a whole. (Filing No. 18 at p. 13). For the same reasons cited above, and after careful review of the evidence in the record, including the vocational expert, and the medical and opinion evidence, the Court finds the ALJ's decision to deny benefits is supported by substantial evidence in the record as a whole.

## CONCLUSION

For the reasons stated above, and after careful consideration of each argument presented in the claimant's brief, the Court finds that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law. Accordingly,

**IT IS ORDERED:**

1. Defendant Carolyn Colvin's Motion to Affirm Commissioner's Decision, ([Filing No. 19](#)) is granted;
2. Plaintiff David A. Diaz's Motion for Order Reversing Commissioner's Decision ([Filing No. 17](#)) is denied; and
3. A separate judgment providing that the decision of the Commissioner is affirmed will be entered.

**DATED:** May 8, 2017.

        **BY THE COURT:**

        **s/ F.A. Gossett, III**
        **United States Magistrate Judge**